UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| H.D.N. CORPORATION; d/b/a CAR CARE TECH, | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:12-CV-3723 |
| AUTOZONE TEXAS, L.P., | § § § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendant AutoZone's Motion for Summary Judgment (Doc. 14). Upon review and consideration of the motion, the response (Doc. 19), the reply (Doc. 25), and the relevant legal authority, and for the reasons stated below, the Court concludes that the motion should be granted.

**I.   Background**

H.D.N. claims Defendant AutoZone's employee Douglas Villalta committed numerous acts of theft against H.D.N. over a period of four to five years. Doc. 2 at ¶ 8. Villalta allegedly charged H.D.N. for auto parts it did not purchase and then resold the parts to unnamed purchasers. *Id.* ¶ 12. After discovering the alleged theft and confronting AutoZone, H.D.N. filed its Original Petition on November 15, 2012 in the District Court of Harris County, Texas, asserting vicarious liability, ratification, violations of the Texas Theft Liability Act, conversion, and negligent hiring. *Id.* ¶¶ 15, 20, 22, 28, 37. On December 26, 2012, AutoZone removed the case to this Court based on diversity jurisdiction. Doc. 1.

**II.   Standard**

Summary judgment is proper if "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Initially the moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant then can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *Anderson*, 477 U.S. at 248-49.

### III. Discussion

#### A. *Vicarious Liability*

Under Texas law, an employer is vicariously liable for the torts of its employees committed in the course and scope of their employment. *GTE Southwest, Inc., v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). Whether an employee acted within the scope of employment is generally a fact issue. *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.—Austin 2004, no pet.). In the case of criminal conduct such as theft, the conduct may fall within the scope of employment "if the acts are foreseeable considering the employee's duties." *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995). However, an employer is not liable for "unimaginable criminal conduct wholly unrelated to the task assigned." *Ross v. Marshall*, 426 F.3d 745, 764 (5th Cir. 2005). Here, H.D.N. must show Villalta's alleged theft occurred within the general course and scope of his duties, but it need not show the alleged theft itself was

specifically authorized.

> In determining a principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act; if that were the case, principals would seldom be liable for their agents' misconduct. Rather, the proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of committing the act.

*Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 99 (Tex. 1994).

Several Texas cases highlight the contours of vicarious liability in the context of fraudulent or unauthorized sales. An insurance salesman was held to have acted within the scope of employment when he unknowingly misrepresented the benefits of an insurance policy. *Id.* at 97. An investment broker did not act within the scope of employment when he embezzled money "through a litany of deceitful acts" including stealing checks and statements, forging signatures on checks, and issuing bogus statements. *Millan v. Dean Witter Reynolds, Inc.*, 90 S.W.3d 760, 767–68 (Tex. App.—San Antonio 2002, pet. denied). A promoter of corporate stock acted within the scope of employment when he (knowingly) misrepresented the company's financial position to induce the purchase; but he did not act within the scope of employment when he subsequently sold forged certificates that were a fraud on the company as well as on the purchaser. *Morrow v. Daniel,* 367 S.W.2d 715, 718 (Tex. App.—Dallas 1963, no writ). Lastly, in an unreported case with similar facts to the instant case, an insurance salesman did not act within the scope of employment when he fraudulently charged a purchaser twice, retaining one deposit in the agent's personal bank account. *Nat'l W. Life Ins. Co. v. Newman*, 02-10-00133-CV, 2011 WL 4916434 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied). The insurance company diligently investigated complaints against the agent, but the agent attempted to conceal his conduct. *Id.* The court pointed out, "[t]here is a distinction between defrauding a customer to reap a benefit for the principal and defrauding a customer to reap a benefit for oneself." *Id.* In summary,

misrepresentations during sales transactions may occur within the scope of employment (*Coats*, 885 S.W.2d at 99; *Morrow*, 367 S.W.2d at 718), but outright theft for personal gain does not. *Millan*, 90 S.W.3d at 767–68; *Newman*, 2011 WL 4916434.

Villalta's alleged fraudulent purchasing and reselling of auto parts went beyond misrepresentations incident to sales transaction on behalf of his employer to theft for personal gain. Villalta's alleged conduct amounts to theft against both H.D.N. and AutoZone. H.D.N. has provided no evidence that Villalta carried out the alleged theft against H.D.N. on behalf of or with AutoZone's authority or approval, and Hiep Nguyen (owner of H.D.N.) specifically denies having such evidence. Hiep Nguyen Dep., Doc. 16-3 at 52:12-53:19. As in *Newman*, AutoZone investigated H.D.N.'s complaints but could not find any evidence of the alleged theft. Ikpah-Asiaruh Oyavu Dep., Doc. 25-2, 9:8. The alleged theft violated AutoZone's Code of Conduct. Docs. 16-5, 16-6.

H.D.N. offers two pieces of evidence to establish Villalta acted within the scope of employment. First, Villalta's supervisor described Villalta as a sales "manager," suggesting he had a broader scope of responsibility than a sales representative. Doc. 19 at ¶ 12. Assuming *arguendo* that theft fell within the scope of managerial duties, the supervisor specified Commercial Sales Managers such as Villalta only "managed" sales accounts, not departments or divisions of the company. Ikpah-Aziaruh Oyavu Aff., Doc. 16-4 at ¶ 12. Second, H.D.N. relies on Mr. Nguyen's own testimony that the supervisor "complained about [Villalta]" and "said that [Villalta] sometimes forged that manager's signature to sign in the paper." Hiep Nguyen Dep., Doc. 16-3 at 54:19, 59:7. These statements are hearsay, Fed. R. Evid. 802. The statements are also contradicted by the supervisor's own testimony that "[t]here is no evidence" that Villalta generated false invoices. Ikpah-Asiaruh Oyavu Dep., Doc. 25-2, 9:8. The supervisor's denial is

not entirely consistent with his subsequent statement that "[t]here were concerns with [Villalta]. I continue[d] to investigate all concerns, just looked at what he was doing, monitored him closely, but I never had any concrete evidence to prove that fact, that those things were taking place." *Id.* at 9:17. It is not clear whether the supervisor's "concerns" related only to H.D.N.'s complaint or to other suspected misconduct. In any event, H.D.N. does not allege the supervisor had prior knowledge of misconduct by Villalta which would make his alleged theft foreseeable. H.D.N.'s complaint was investigated by four higher level managers directly overseeing the supervisor, Doc. 25-1, and a Regional Loss Prevention Manager, who states she has "no knowledge of any other customer complaints about theft on the part of Villalta," apart from H.D.N.'s complaint. Tanisha Gonzalez-Wellmann Aff., Doc. 16-9 at ¶ 6. The Regional Loss Prevention Manager scheduled a meeting with Villalta to discuss the complaint, but he resigned a few days later. *Id.* at ¶ 3. After he resigned, he refunded the charge disputed by H.D.N. and "billed the auto part to the correct account." *Id.* It is not clear why Villalta resigned, given AutoZone's denial of any evidence of misconduct, or how he refunded and rebilled a charge after he had resigned from the company. However, these gaps and the supervisor's ambiguously plural "concerns" do not amount to evidence that the alleged theft was foreseeable to AutoZone.

Apart from the issue of vicarious liability, H.D.N. provides limited evidence for his underlying complaint that Villalta committed theft in the first place. H.D.N. does not allege the amount of unauthorized charges, merely asserting the jurisdictional amount. Doc. 2 at 11. H.D.N. does estimate his ordinary authorized purchases from AutoZone were $5,000 per month. *Id.* When AutoZone's Regional Manager visited H.D.N.'s shop to investigate the disputed charges, he could not obtain any documentation to substantiate the complaint. Jerry Carrier Dep., Doc. 25-1 at 14:3.

> I asked [Villalta] if there was anything we could do to help him research it; and he said there was not; and the—you know, when we were looking around the office, the office was in quite disarray with invoices all over the place. And he told me at that time that he really didn't have a very good filing system, so there was nothing that we could help him research.

*Id.*

Mr. Nguyen testified his complaint was instigated not by an unauthorized charge but by a phone call he received from Gilbert Camamo, the owner of a neighboring auto shop. Hiep Nguyen Dep., Doc. 16-3 at 34-35, 51. Mr. Nguyen's testimony appears to suggest that an individual attempted to sell Mr. Camamo an auto part with an invoice made out in the name of H.D.N.'s shop ("Car Care Tech"):

> A. [Villalta] used the name of Car Care Tech and the account of Car Care Tech and ordered the parts and then sell it to another place. And that invoice was then sent over and the signature was forged. The reason I could find that out, because of the shop next door. . . .
>
> Q. And what did Gilbert tell you?
>
> A. He said, in your shop, there's a customer that gave a piece of invoice. And on that invoice there is a name, "Car Care Tech," and the account number. And that person took that part over there and asked you where to install that parts for that person. And then, he called me back and he said, "Hiep, you have to check your invoices carefully because there is someone who stole Car Care Tech's account number."

*Id.* at 34. Mr. Nguyen did not act on this information until a week later when he was presented with a charge for a head gasket which he disputed. *Id.* at 36. At that point, he attempted to reconcile all his prior monthly bills from AutoZone with the invoices which he had stored in his office. *Id.* From 2007 to 2012, Mr. Nguyen had never checked the items on his monthly bills, "because [he] trusted AutoZone." *Id.* at 42. Mr. Nguyen found multiple items—H.D.N. does not allege how many—for which he did not have invoices. *Id.* at 47. He concluded these items were unauthorized charges. *Id.*

> Q. How do you know that a missing invoice means that you were inappropriately charged for something?
>
> A. Because when I found out that they are missing, I called the main office at AutoZone and tried to check if they were the parts that I had ordered or not. And then they gave me the answer that they could not give that out to me.
>
> Q. Okay. But again, how does that mean that because you don't have the information, that someone inappropriately charged you for something? . . . Because to me, it just looks like missing invoices that you just didn't keep in your file. So, how are you telling me that that's not the case, that the missing invoice means that you were inappropriately charged for something?
>
> MR. RIGBY: Objection, argumentative.
>
> A. Definitely, they charged me inappropriately—
>
> Q. (BY MS. JOHNSON) How do you know—
>
> A. because I always kept the invoices.

*Id.* at 48-49. During Mr. Nguyen's deposition, AutoZone presented 18 invoices that were not in his files, which he admitted were correctly signed by his brother. *Id.* at 73.

> Q. How is it that you did not have those invoices in your file?
>
> A. It could have been caused by the hurricane. So I lost those files. And they moved back and forth . . . . I could have missed those documents and I couldn't find them or so while I was checking them out . . . . We reorganized to move the files, to reorganize them.
>
> Q. So you're saying that some of the invoices could have been lost in that process?
>
> A. Perhaps so.

*Id.* at 73-74. Given the absence of evidence in the record connecting AutoZone or its employees to any unauthorized charges, H.D.N. has failed to meet its burden of showing AutoZone was vicariously liable.

### B.   *Conversion and Theft*

H.D.N. also claims AutoZone is liable for conversion and violations of the Texas Theft Liability

7 / 9

Act. Tex. Civ. Prac. & Rem. Code Ann. § 134.001 *et seq.* (Vernon). The Act does not include provisions for vicarious liability for employers. H.D.N.'s claims under the Act and for common-law conversion both fail for lack of vicarious liability, as explained above. The conversion claim is also barred by the statute of limitations, as explained below.

### C. *Ratification*

H.D.N. claims AutoZone is liable under the doctrine of ratification. Ratification may occur where an agent acts completely without authority, but where the principal retains the benefits after acquiring "full knowledge" of the acts. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 488 (Tex. App.—Dallas 2007, pet. denied). H.D.N. has provided no evidence that AutoZone had full knowledge of the alleged acts. On the contrary, AutoZone shows that it investigated the complaints and found no evidence of the alleged theft.

### D. *Negligent Hiring*

H.D.N. claims AutoZone is liable for negligent hiring. Negligent hiring is based on an employer's direct negligence rather than vicarious liability for the employee's acts. *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Again, H.D.N. must show Villalta's acts were foreseeable to AutoZone—not necessarily that they were "within the course and scope of employment" but that they were proximately caused or "in some manner job-related" rather than "intervening criminal acts." *Wise v. Complete Staffing Services, Inc.*, 56 S.W.3d 900, 903 (Tex. App.—Texarkana 2001, no pet.). Foreseeability of Villalta's acts is also required for the threshold element of duty. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953-54 (Tex. 1996). H.D.N. has provided no evidence that Villalta's acts were foreseeable, as explained above.

H.D.N.'s negligent hiring claim is also subject to a two-year statute of limitations. Tex.

Civ. Prac. & Rem. Code Ann. § 16.003. H.D.N. responds that the accrual of the negligence claim was delayed under the discovery rule. Doc. 19, P 20, 7. The discovery rule only applies where the nature of the injury is inherently undiscoverable and the plaintiff could not know of the facts giving rise to a cause of action by exercising reasonable diligence. *Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006). Here, Mr. Nguyen could have discovered unauthorized charges by checking his statements.

**IV.  Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED** and Plaintiff's case is **DISMISSED**.

Final judgment will be entered by separate document.

SIGNED at Houston, Texas, this 9th day of September, 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE